**No. 47235.**—Protests 33057–K, etc., of Alex Lee Wallau, Inc. (New York).

OLIVER, Presiding Judge: These suits against the United States were brought at the port of New York to recover customs duties claimed to have been illegally exacted upon the importation of certain bed socks from England.   The merchandise was assessed with duty according to value as outerwear at the rates provided for in paragraph 1114 (d) as modified by the trade agreement with the United Kingdom, promulgated in T. D. 49753, and it is claimed to be properly

dutiable according to value under the provisions of paragraph 1114 (b) as modified by the same trade agreement.

The competing provisions as set forth in the said trade agreement with the United Kingdom read as follows:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
|---|---|---|
| 1114 (d) | Outerwear and articles of all kinds knit or crocheted, finished or unfinished, wholly or in chief value of wool, and not specially provided for (except hats, bonnets, caps, berets, and similar articles): Infants' outerwear valued at more than $2 per pound: | |
| | 'Made or cut from Jersey fabric knit in plain stitch on a circular machine. | 50¢ per lb: and 25% ad val. |
| | Other. | 50¢ per lb. and 50% ad val. |
| | Other than infants' outerwear: Valued at more than $2 but not more than $5 per pound. | 50¢ per lb. and 40% ad val. |
| | Valued at more than $5 per pound. | 50¢ per lb. and 30% ad val. |
| 1114 (b) | Hose and half-hose, finished or unfinished, wholly or in chief value of wool: | |
| | Valued at more than $1.75 but not more than $3 per dozen pairs. | 50¢ per lb. and 35% ad val. |
| | Valued at more than $3 per dozen pairs. | 50¢ per lb. and 25% ad val. |

It is not disputed that the articles in question are bed socks; that they are wholly or in chief value of wool; and that they are knit or crocheted. The sole question for our determination is whether or not they are hose or half-hose within the provision for such articles in paragraph 1114 (b), *supra*.

Plaintiff has limited its claim to the merchandise represented by invoice item numbers 1735W, 15W, 105, 1746, 645, and 619. On the trial, the president of the plaintiff-corporation identified samples of five of the six items in question and they were admitted in evidence and marked plaintiff's exhibits 1 to 5, inclusive. No sample of the merchandise represented by item 15W was produced, but the witness testified that except as to color it was the same as item 105, exhibit 3. Counsel for plaintiff also offered in evidence an article (illustrative exhibit A), which was identified by one of the defendant's witnesses as an anklet, and which he regarded as hose.

In addition to the samples referred to, the record before us consists of the oral testimony of six witnesses, three of whom appeared on behalf of the plaintiff and three for the defendant. The testimony of plaintiff's witnesses tended to show that the articles in question are embraced within dictionary definitions of the word "hose." The Government sought to establish by its witnesses that these bed socks are not hose or half-hose within the common meaning of these terms. No attempt was made by either party to establish commercial designation, and it is not claimed that these articles are bought and sold or advertised as hose or half-hose. They seem to have a distinct description in the trade as "bed socks."

Plaintiff's witnesses testified that these bed socks are sold in three sizes, to wit: small, medium, and large, which are equivalent to sizes 9, 9½, and 10, respectively; that they are used to keep the feet warm; and that for such purpose they are used in bed, or out of bed, either alone or with mules or slippers. It is limited to observations by the witnesses in their homes where these bed socks were worn by members of their families and their friends. They compared these articles with anklets like illustrative exhibit A referred to. Each of the witnesses had read to him or her a dictionary definition of the word "hose," and all agreed that the present merchandise corresponded to the definition as read. These definitions are discussed later in this decision.

The testimony of defendant's witnesses is to the effect that articles of hose are made to fit the foot and the leg and are used with a shoe; and that half-hose is

made to fit over the calf of the leg and to be worn with a shoe. Their main distinction between the present articles and those which they regarded as hose or half-hose was that the bed socks in question are made to fit loosely around the foot, and that it is not practical for them to be worn with the use of a shoe. Other differences stated by the defendant's witnesses were that the articles in question are made in three general sizes and are not reinforced, whereas hose and half-hose are never made in less than four specific and definite sizes and are usually reinforced. One of defendant's witnesses compared the imported articles with bootees, stating that they differed from babies' bootees only in size.

The highly contradictory nature of the testimony adduced by the witnesses for both sides offers little, if any, aid toward a proper determination of the present issue. As heretofore stated, the question before us involves the common meaning of the term "hose." In the case of *United States* v. *John B. Stetson Co.*, 21 C. C. P. A. 3, T. D. 46319, the court said:

No commercial designation having been established, we may next inquire as to the state of the law and the record on the question of the common designation of the imported goods. The common meaning to be attached to a term or word used by the Congress in a provision of a tariff act is a matter to be determined by the court having the same under consideration. In making this determination the court may rely upon its own understanding of the word or term used, and it may assist its own understanding by reference to the works of standard lexicographers, scientific authorities, the testimony of witnesses, or by such other means as may be available. If testimony be offered upon the common meaning of a statutory word or term such testimony is advisory only and has no binding effect on the court. (Citing cases.)

Definitions of the word "hose" are set forth in leading authorities as follows:

*Webster's New International Dictionary—hose.* 1. A leg covering, in modern use covering also the foot, but formerly sometimes reaching only to the ankle; a stocking, or stockings, of any length.

 *       *       *       *       *       *       *

3. Close-fitting coverings for the legs and waist of the general nature of tights, as formerly worn, often fastened to the doublet by ribbons or strings called points; later, breeches reaching only to the knee.

*Funk & Wagnalls Standard Dictionary—hose.* 1. A covering, usually knit or woven for the lower part of the legs and the feet; a stocking; anciently, a garment worn by men covering the legs and the lower part of the body, like very tight trousers: mostly used as a plural.

*Century Dictionary—hose.* 2. In present use (as either singular or plural), covering for the feet and lower part of the legs; stockings. Short stockings, not reaching to the knee, are distinctively called *half-hose* or *socks*, or, rarely, *anklehose.*

The important element in those definitions, in our judgment, is the reference to hose as coverings for the foot and the leg. Another significant factor is the specific mention of the word "stocking." In the same authorities, the word "stocking" is defined as follows:

*Webster's New International Dictionary—stocking.* 1. A close-fitting covering for the foot and leg, usually knit or woven.

*Funk & Wagnalls Standard Dictionary—stocking.* A covering for the foot and ower part of the leg, close-fitting and usually woven or knitted, of wool, cotton, or silk: sometimes limited to one reaching above the knee as distinguished from a *sock.*

*Century Dictionary—stocking.* 1. A close-fitting covering for the foot and lower leg.

Within the scope of the quoted definitions, hose and half-hose are close-fitting articles, like stockings, that are made to cover the foot and the leg or part of the leg.

The articles under consideration are bed socks and are bought and sold in the

trade as "bed socks." In the cited dictionary authorities, the word "sock" is defined as follows:

*Webster's New International Dictionary—sock.* 2. A knit or woven covering for the foot and lower leg; a stocking with a short leg.

*Funk & Wagnalls Standard Dictionary—sock.* 1. A knit or woven foot-covering having a leg shorter than that of a stocking.

*Century Dictionary—sock.* 2. A knitted or woven covering for the foot, shorter than a stocking; a stocking reaching but a short distance above the ankle.

Considering the above definitions in the light of our interpretation of the common meaning of the word "hose," it seems clear that the word "socks" falls squarely within the term "half-hose." They are likened to a stocking in all of the definitions, the distinguishing feature being the length of the leg. In other words, a sock, like a stocking, is a close-fitting article, made to cover the foot and part of the leg, but having a shorter length than a stocking. Calling the imported article a "bed sock" does not make it half-hose.

It has been frequently stated that samples of merchandise involved in classification cases are potent witnesses. *United States* v. *May Department Stores Co.* (16 Ct. Cust. Appls. 353, T. D. 43090) and *United States* v. *Bernard Judae & Co.* (18 C. C. P. A. 68; T. D. 44029).

A careful inspection of the samples in evidence, exhibits 1 to 5, inclusive, reveals that they are designed to cover the foot only. The uppermost part reaches the lower part of the ankle. They are made in a variety of colors and are ornamented with fancy knots and draw strings. The articles are rather flimsily constructed, quite bulky, and obviously were never intended to endure hard wear. It is apparent from a visual examination of these items that they are designed to fit loosely around the feet and are evidently intended for use by people in bed or by convalescents who are able to sit in a chair. While they may occasionally be used with a slipper, it is evident from their appearance that it would be entirely impractical to use them regularly that way. It is our judgment, that the bed socks in question are not hose or half-hose within the common understanding of that term, and we therefore hold that they are not properly dutiable under the provision for hose and half-hose in paragraph 1114 (b), *supra,* as claimed by plaintiff.

The protests are overruled and the decision of the collector in each case is affirmed. Judgment will be rendered accordingly.